IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TROY L. DOUGLAS, | Civil Action No. 15-938 |
| Plaintiff, | |
| | Judge Cathy Bissoon/ |
| v. | Chief Magistrate Judge Maureen P. Kelly |
| UNIVERSITY OF PITTSBURGH, | Re: ECF No. 36 |
| Defendant | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

Presently before the Court is a Motion for Summary Judgment filed by Defendant University of Pittsburgh ("the University"). ECF No. 36. It is respectfully recommended that the Motion for Summary Judgment be granted in part and denied in part.

### II. REPORT

#### A. FACTUAL AND PROCEDURAL BACKGROUND

##### 1. Factual Background

Plaintiff Troy L. Douglas ("Plaintiff") filed this diversity action arising from his employment as an assistant coach on the University's football team. In his Complaint, Plaintiff alleges that the University: (1) breached a two-year employment contract by terminating him less than a year into his contract; (2) fraudulently induced him into accepting employment; and (3) negligently misrepresented the terms of Plaintiff's employment. ECF No. 1 ¶¶ 42-58.

Plaintiff's collegiate football coaching career began in 1989. ECF No. 41 ¶ 3. Between 1989 and 2013, he coached at eleven different schools in nine states. Id. Prior to coaching at the University, he coached at Iowa State University ("Iowa State"); his Iowa State contract term was supposed to end in June 2014. ECF No. 41 ¶ 5.

Plaintiff's path to the University's football program began at a coaching convention in January 2014. Id. ¶ 9. There, he spoke with Matt House and Joe Rudolph, who were assistant football coaches at the University, under then head football coach Paul Chryst ("Chryst"). Id. They told Plaintiff that the University may need another assistant football coach and that Chryst may contact Paul Rhoads ("Rhoads"), head football coach at Iowa State, regarding Plaintiff. Id. ¶ 12. Chryst contacted Rhoads after the convention; Rhoads gave permission for Plaintiff to visit the University about a possible job. Id. ¶ 13.

Plaintiff first met Chryst at Chryst's office at the University on February 10, 2014. Id. ¶ 16. During the meeting, Chryst told Plaintiff that "[y]ou got the job" and "[w]e're going to give you a two year contract." Id. ¶¶ 18-19. Chryst told Plaintiff that Plaintiff would receive $225,000 for his first year of his contract and $240,000 for the second year. Id. ¶ 20. Chryst never specified other additional compensation. Id. ¶ 21. Chryst told Plaintiff that contractual perks would include "a University insured car, moving expenses, a country club membership, temporary housing, a clothing allowance, game tickets and health, retirement and tuition benefits." Id. ¶ 22. At the meeting with Chryst, Plaintiff took notes. Id. ¶ 23. Plaintiff asked Chryst whether he planned to stay at the University; Chryst said "yes." Id. ¶ 43.

Plaintiff's work as an assistant football coach at the University began on February 14, 2014. Id. ¶ 46. The University's records show Plaintiff was a new hire on February 11, 2014, and confirm that his start date was February 14, 2014. ECF No. 44 ¶ 75.

On February 18, 2014, Plaintiff was provided a letter from Marcus Bowman ("Bowman"), Assistant Athletic Director for Administration and Planning, with information and guidelines relative to the University's moving and relocation policy. ECF No. 42-5. Plaintiff

2

signed the letter on February 19, 2014, confirming that he read and understood the moving terms. Id. at 2.

On February 21, 2014, Plaintiff received a memo from Bowman and an enclosed Employment Contract by and between the University and Plaintiff. ECF Nos. 41 ¶ 47 and 42-6. The University requested, in the memo, that Plaintiff review and sign the Employment Contract if he did not have any questions. ECF No. 42-6 at 2. Bowman requested that Plaintiff contact him if Plaintiff had any questions and Bowman provided his direct office phone number. ECF No. 42-6 at 2. Plaintiff faxed the Employment Contract to his agent, George Bass ("Bass"). ECF No. 41 ¶ 48.

The Employment Contract contained several terms that concerned Plaintiff. It listed Plaintiff's second-year salary as $235,000 instead of $240,000. ECF No. 42-6 at 6. Another provision gave the University "just cause" to terminate Plaintiff if Chryst's employment as head coach was voluntarily terminated or he was terminated for cause. Id. at 13. Plaintiff disagreed with certain terms in the Employment Contract and/or had questions regarding: car insurance, basketball tickets, vacation, grievance procedure, best efforts, and an assistant coach buyout. ECF No. 42-7 at 2.

After discussing with Bass the issues that Plaintiff had with the Employment Contract, Plaintiff spoke with Chryst about Plaintiff's concerns. ECF No. 41 ¶¶ 49, 54. Chryst promised to take care of the issues that Plaintiff raised. Id. ¶ 54. In April 2014, Plaintiff again complained to Chryst because no changes had been made to the Employment Contract. ECF No. 41 ¶ 55. Chryst reiterated that he was working on it. Id. ¶ 56.

In June 2014, Plaintiff moved his wife and children from Iowa to Pittsburgh. Id. ¶ 58. During the summer of 2014, Plaintiff contacted Chris LaSala ("LaSala"), Associate Athletic

3

Director for Football Operations at the University, relative to his lack of a written contract. Id. ¶ 59. LaSala told Plaintiff that Chryst "was working on it." Id. With Chryst not reporting any progress by the start of the 2014 football season, Plaintiff decided not to "make a big issue out of it" and he just wanted to "get through the year and then figure it out." Id. ¶ 60. However, Plaintiff did say something to Chryst "right around Thanksgiving" in 2014. ECF No. 42-11 at 68.

Following the conclusion of the regular season football schedule in December 2014, Chryst met with his assistant coaches, including Plaintiff, telling them that there was nothing to discuss regarding an open head football coach position at the University of Wisconsin ("Wisconsin") because Wisconsin had not reached out to him. ECF No. 41 ¶¶ 61-62. Chryst previously played and coached football at Wisconsin. Id. ¶ 62. Plaintiff later learned that Wisconsin had invited Chryst to interview for the head football coach position. Id. ¶ 63. Subsequently, Chryst was offered and accepted the position at Wisconsin. Id. ¶ 64. Plaintiff learned that Chryst had accepted the position when Plaintiff saw the press conference. Id. After Chryst left the University, it collected $3.28 million from Chryst as a buyout pursuant to his employment contract. ECF No. 44 ¶ 71.

On December 26, 2014, the University, through Randy Juhl, Acting Athletic Director, hand-delivered a termination letter to Plaintiff and all of the assistant football coaches. ECF Nos. 41 ¶ 66 and 42-8. In the letter, the University informed Plaintiff that it was unilaterally terminating his employment effective February 6, 2015. ECF No. 42-8. The letter stated that Plaintiff was expected to perform his coaching duties through the conclusion of the Armed Forces Bowl on January 2, 2015. Id. It also stated that if Plaintiff coached at the Bowl, he would receive a Bowl bonus in the gross amount of his monthly salary. Id. The University also

4

offered to: pay Plaintiff's expenses to attend the AFCA coaching convention on January 14, 2015, in Louisville, Kentucky; pay his salary through February 6, 2015; and provide benefits through February 28, 2015. Id.

By letter dated March 10, 2015, the University informed Plaintiff that, as a courtesy and without any legal obligation, it agreed to continue Plaintiff's salary and benefits through March 2015. ECF No. 42-9. In the letter, Ronald W. Frisch ("Frisch"), Associate Vice Chancellor for Human Resources, stated that since Plaintiff had declined to sign the Employment Contract, he was employed as an "at-will" employee. Id. Frisch further noted that even if Plaintiff had signed the Employment Contract, he would not have been entitled to a salary continuation because his employment was terminated due to Chryst's departure. Id.

After the University football team played in the Armed Forces Bowl, Chryst contacted Plaintiff about interviewing to join him on the Wisconsin coaching staff. ECF No. 41 ¶¶ 69-70. Plaintiff interviewed at Wisconsin, but was not selected for a coaching position. Id. ¶ 70.

Plaintiff alleges that he sustained damages as a result of his firing. He took a quality control position at Florida State University for $40,000 per year, far less than the $240,000 he expected the University to pay him in his second year there. ECF No. 1 ¶ 36. He also claims as additional damages in the form of: moving costs; having to borrow $35,000 from his retirement fund; putting his Pittsburgh-area home on the market for an anticipated loss; and losing benefits he had through his employment at the University (as well as additional costs incurred due to his lost benefits). ECF No. 1 ¶¶ 34-35, 37-39.

### 2. Procedural Background

Plaintiff initiated this action by filing a Complaint on July 20, 2015. ECF No. 1. On October 5, 2015, the University filed its Answer to Complaint and Additional Defenses. ECF

No. 6. Also on the same date, the University and the University of Pittsburgh Board of Trustees ("the Board of Trustees") filed a Motion to Dismiss, seeking dismissal of the Board of Trustees as a defendant. ECF No. 7. On January 19, 2016, this Court issued a Report and Recommendation recommending that the Motion to Dismiss be granted. ECF No. 27. The Report and Recommendation was adopted on February 22, 2016, and the Board of Trustees was dismissed as a defendant. ECF No. 30.

The parties subsequently engaged in discovery. ECF No. 34. Defendant's Motion for Summary Judgment and supporting material were filed by the University on May 20, 2016. ECF Nos. 36-39. On June 24, 2016, Plaintiff filed his Brief in Opposition to the Motion for Summary Judgment and supporting materials thereof. ECF Nos. 40-42. On July 1, 2016, the University filed a Reply to the Brief in Opposition, a Response to Plaintiff's Additional Facts and a Supplement to the previously filed Appendix. ECF Nos. 43-45. The Motion is now ripe for consideration.

### B.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991). When determining whether there is a genuine issue of material fact, the

6

court must view the facts and all reasonable inferences in favor of the nonmoving party. EEOC v. Allstate Ins., 778 F.3d 444, 448 (3d Cir. 2015).

In order to avoid summary judgment, a party must produce evidence to show the existence of every element essential to the case that it bears the burden of proving at trial; "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the nonmoving party fails to make a sufficient showing on any essential element of its case, the moving party is entitled to judgment as a matter of law. Id.

### C. DISCUSSION

#### 1. Count I - Breach of Contract

Count I is premised on Plaintiff's assertion that the University entered into a two-year oral contract of employment with him on February 10, 2014. ECF No. 1 ¶ 43. In Count I, Plaintiff alleges that the University breached his two-year coaching contract by terminating his employment without just cause less than a year into his employment. ECF No. 1 ¶ 45.

In moving for summary judgment as to Count I, the University argues that: (1) there was no "meeting of the minds" on the essential terms of any contract for employment with the University when Chryst made a verbal offer to Plaintiff on February 10, 2014; and (2) the essential terms of the employment relationship intended by the University were reduced to a written contract provided to Plaintiff shortly after the February 10, 2014, meeting that Plaintiff refused to sign, but which he accepted by virtue of his continued employment. ECF No. 38 at 2.

In opposing the University's Motion for Summary Judgment as to the breach of contract claim, Plaintiff argues that a jury could readily determine that there was a meeting of the minds on the essential terms of an employment contract. ECF No. 40 at 7. Plaintiff argues that Chryst made a specific offer of employment to Plaintiff identifying each integral term including duties,

7

a two-year term of employment, a first-year salary, a second-year salary and benefits and Plaintiff accepted the offer. Plaintiff further argues that the evidence shows that, relying on the parties' agreement, Plaintiff resigned from his then current employment at Iowa State, moved to Pittsburgh and began work on February 14, 2014. Id. at 7-8.

To succeed on a breach of contract claim under Pennsylvania law, a plaintiff must prove: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. Hearbest, Inc. v. Adecco USA, Civ. A. No. 13-1026, 2014 U.S. Dist. LEXIS 173338, *11 (W.D. Pa. Dec. 14, 2014) (citing McShea v. City of Philadelphia, 995 A.2d 334, 340 (Pa. 2010)). "A contract is enforceable when the parties reach mutual agreement, exchange consideration, and have set forth the terms of their bargain with sufficient clarity." Id. at *11-12 (citing Great N. Ins. Co. v. ADT Sec. Servs., Inc., 517 F. Supp. 2d 723, 736 (W.D. Pa. 2007)). "It is black letter law that in order to form an enforceable contract, there must be an offer, acceptance, consideration or mutual meeting of the minds." Schreiber v. Olan Mills, 658 A.2d 380, 383 (Pa. Super. Ct. 1995). "[T]ime or manner of performance, and price or consideration are essential terms of an alleged bargain, and must be supplied with sufficient definiteness for a contract to be enforceable." Great N. Ins. Co., 517 F. Supp.2d at 736; Lombardo v. Gasparini Excavating Co., 123 A.2d 663, 666 (Pa. 1956). Furthermore, it must be noted that Pennsylvania recognizes oral contracts of employment. George W. Kistler, Inc. v. O'Brien, 347 A.2d 311, 315 (Pa. 1975).

In the instant case, the parties agree that, at the February 10, 2014, meeting, Chryst told Plaintiff that "[w]e're going to give you a two year contract." ECF No. 41 ¶ 19. Chryst added that Plaintiff's salary would be $225,000 in year one and $240,000 in year two. Id. ¶ 20. Other benefits included a University-insured car, moving expenses, a country club membership,

temporary housing, a clothing allowance, game tickets, and health, retirement, and tuition benefits. Id. ¶ 22. The parties further agree that the University records show Plaintiff as a new hire as early as February 11, 2014, and that Plaintiff began working as an assistant football coach on February 14, 2014. ECF No. 44 ¶ 75.

Despite the agreement between the parties as to certain facts, in particular some of the terms of employment, it appears that there are issues of fact as to other to other terms, including: the exact duration of the contract at the time of Chryst's verbal offer, what would happen if Chryst left before the end of his contract term, what would happen if Plaintiff left before the end of his contract term, the number of vacation days, income from outside activities and other fringe benefits. ECF No. 38 at 4-6.

Considering the above-noted evidence, as well as additional evidence revealed during discovery, the evidence is sufficient to establish a jury question as to whether the University and Plaintiff exchanged and agreed to essential terms so as to form a contract. Accordingly, the entry of summary judgment is not warranted.

In the alternative, the University contends that Plaintiff acquiesced to the terms of the Employment Contract that was provided to him on February 21, 2014, ECF No. 42-6, by continuing to work after receiving it without signing it. ECF No. 38 at 8-10. In response, Plaintiff asserts that the University's argument is based on the erroneous assertion that he was an at-will employee. ECF No. 40 at 14-15. Plaintiff argues that he was not an at-will employee because he had a two-year term of employment that was not subject to termination or modification at the whim of the University. Id.

The University cites three cases in support of its proposition: Weir v. Hudson Coal Co., 99 F. Supp. 423 (M.D. Pa. 1951); Shepler v. Crucible Fuel Co., 140 F.2d 371 (3d Cir. 1944); and

Williams v. Jacksonville Terminal Co., 315 U.S. 386 (1942). These actions were brought under the Fair Labor Standards Act of 1938, rather than as suits for breach of contract. Weir, 99 F. Supp. at 424; Shepler, 140 F.2d at 372; Williams, 315 U.S. at 388. Additionally, the plaintiffs in these matters were at-will employees before their employers changed their employment terms. Weir, 99 F. Supp. at 425 ("plaintiffs were individually employed by the defendant . . . for an indefinite period"); Shepler, 140 F.2d at 373 (does not indicate plaintiffs contracted for a specific length of employment); Williams, 315 U.S. at 397 (the "employment of the red caps was at will.")

The University's argument is based on the assumption that Plaintiff was an at-will employee at the time of the delivery of the memo dated February 21, 2014, and the Employment Contract. Because the Court has found that a jury question exists as to whether Plaintiff was under a two-year contract at that time, the University's argument does not merit the grant of summary judgment. Further, as Plaintiff points out, at the very least, there is a genuine factual dispute as to whether Plaintiff was fulfilling his obligations under an oral agreement or acquiescing to the alleged modified terms that were later proposed in writing, such that the entry of summary judgment is precluded. ECF No. 40 at 14.

Accordingly, it is recommended that the Motion for Summary Judgment as to Count I, the breach of contract claim, be denied.

### 2. Counts II and III - Fraud in the Inducement and Negligent Misrepresentation

In Counts II and III, Plaintiff brings claims for fraud in the inducement and negligent misrepresentation based on Chryst's representations to Plaintiff as to two terms of his employment agreement.

In Count II, Plaintiff claims that the University misrepresented to Plaintiff the duration of employment and the amount of compensation in the second year of employment in order to induce Plaintiff to accept the offer of employment. ECF No. 1 ¶¶ 48-49. Plaintiff alleges that the University either knew its representations concerning these two terms were false when it made the offer or it acted recklessly as to the truth of the representations. Id. ¶ 50.

In Count III, Plaintiff brings a claim of negligent misrepresentation. Specifically, Plaintiff again claims that the University misrepresented the two same terms of employment. Id. ¶ 55. Plaintiff alleges that the University failed to use reasonable care in communicating the two terms to him in order to induce Plaintiff's reliance. Id. ¶¶ 56-57.

The University moves for summary judgment as to Count II on the basis of the gist of the action doctrine, asserting that this tort claim is a restatement of his breach of contract claim.[1] ECF No. 38 at 10-11. In response, Plaintiff challenges the University's characterization of his fraud in the inducement claim as an effort to bring this case within the gist of the action doctrine. ECF No. 40 at 15. Specifically, Plaintiff argues that the gist of the action doctrine does not bar a claim like his of fraud in the inducement that is grounded in the social policy against fraud. Id.

The gist of the action doctrine prohibits a plaintiff from re-casting ordinary breach of contract claims into tort claims. B.G. Balmer & Co. v. Frank Crystal & Co., 2016 Pa. Super. LEXIS 516 at *31 (Pa. Super. Ct. 2016) (citing Empire Trucking Co., Inc. v. Reading Anthracite Coal Co., 71 A.3d 923, 931 n.2 (Pa. Super. Ct. 2013)).

In considering the effect of the gist of the action doctrine on Plaintiff's two tort claims of fraud in the inducement and negligent misrepresentation, Pennsylvania law applies. The United States Court of Appeals for the Third Circuit recently addressed the application of the gist of the

---

[1] The University moves for summary judgment via the gist of the action doctrine only as to Count II but the doctrine may be equally applied to Count III. See Young v. Home Depot U.S.A., Inc., 2016 U.S. Dist. LEXIS 136738 (finding claim of negligent misrepresentation that had its genesis in a contract barred by gist of the action doctrine).

11

action doctrine in Bull Int'l., Inc. v. MTD Consumer Group, Inc., Civ. A. No. 15-2438, 2016 U.S. App. LEXIS 11871 (3d Cir. June 29, 2016).[2] In Bull, the Third Circuit held:

> Pennsylvania courts apply the gist of the action doctrine "to ensure that a party does not bring a tort claim for what is, in actuality, a claim for a breach of contract." Bruno v. Erie Ins. Co., 106 A.3d 48, 60 (Pa. 2014). Under the doctrine, a party is precluded from pursuing a tort action for the breach of contractual duties in the absence of any separate or independent event giving rise to the tort. See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 103 (3d Cir. 2001) (applying Pennsylvania law). The purpose of the doctrine is thus "to maintain the conceptual distinction between breach of contract claims and tort claims." eToll, Inc. v. Elias/Savion Adver., Inc., 2002 PA Super 347, 811 A.2d 10, 14 (Pa. Super. Ct. 2002).
>
> As we have explained, "[t]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." Bohler-Uddeholm Am., 247 F.3d at 103-04 (citation omitted). Said another way, "a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." Id. at 104 (citation and internal quotation marks omitted).
>
> With these principles in mind, Pennsylvania courts and other persuasive authority interpreting Pennsylvania law have catalogued the types of claims that the gist of the action doctrine bars. The gist of the action doctrine precludes claims: (1) "arising solely from a contract between the parties"; (2) where "the duties allegedly breached were created and grounded in the contract itself"; (3) where "the liability stems from a contract"; or (4) where the tort claim "essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." eToll, 811 A.2d at 19 (citations omitted).

Bull, 2016 U.S. App. LEXIS at *52-54.

From the list of claims identified by the Third Circuit in Bull, it is clear that Plaintiff's two tort claims - fraud in the inducement and negligent misrepresentation - will be precluded by the gist of the action doctrine if they rely on conduct that is subject to the provisions of the alleged employment agreement.

---

[2] Although the Court is aware the decision of the Third Circuit in Bull is non-precedential, it nevertheless sets forth an accurate state of Pennsylvania law on the issue.

A review of the allegations set forth in Counts II and III of the Complaint and the evidence of record before the Court in the summary judgment filings of the parties reveals that Counts II and III are based on the breach of specific executory promises arising from the alleged employment agreement. ECF No. 1 ¶ 48 (describing two terms offered to Plaintiff at February 10, 2014, meeting as the basis for Count II), ¶ 55 (describing the same two terms offered to Plaintiff at February 10, 2014, meeting as basis for Count III). Plaintiff does not allege fraud or misrepresentation beyond these two terms of the alleged contract. Given that the nature of these averments is such that they arise solely out of the contractual relationship between the parties, the Court finds that Plaintiff's claims of fraud in the inducement and negligent misrepresentation have their genesis in contract and are nothing more than a restatement of Plaintiff's claim for breach of contract in Count I. As such, his tort claims are subsumed into the breach of contract claim through the gist of the action doctrine. Thus, because the doctrine precludes Plaintiff's torts claims in Counts II and III as they duplicate the breach of contract claim, it is recommended that the Motion for Summary Judgment be granted as to Counts II and III.[3]

## III. CONCLUSION

For the reasons set forth herein, it is respectfully recommended that the University's Motion for Summary Judgment, ECF No. 36, be denied as to Count I and be granted as to Counts II and III.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir.

---

[3] This disposition obviates the need for analysis of the University's alternative argument as to these claims. ECF No. 38 at 11-14.

13

2011). Any party opposing objections may file their response to the objections within fourteen days thereafter in accordance with Local Civil Rule 72.D.2.

Dated: October 24, 2016.

_____
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: Judge Cathy Bissoon
United States District Judge

All Counsel of Record via CM-ECF